834 A.2d 899 (2003)
Anthony M. WASHINGTON, Appellant
v.
UNITED STATES, Appellee.
No. 02-CO-31.
District of Columbia Court of Appeals.
Submitted February 6, 2003.
Decided November 6, 2003.
*900 Anthony M. Washington, filed a brief pro se.
Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Barbara J. Valliere, and John P. Gidez, Assistant United States Attorneys, were on the brief for appellee. Roy W. McLeese, III, Assistant United States Attorney, was also on the supplemental memorandum for appellee.
Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.
TERRY, Associate Judge:
This is an appeal from the denial of appellant's second motion to vacate sentence pursuant to D.C.Code § 23-110 (2001). Appellant contends that the trial court erred in concluding that his motion was procedurally barred. He also challenges the denial of his separate motion for new trial based on a claim of newly discovered evidence. We affirm both rulings.

I. FACTUAL BACKGROUND
On February 18, 1988, a jury found appellant guilty of second-degree murder while armed.[1] On April 22, 1988, he was *901 sentenced to a prison term of fifteen years to life. We affirmed his conviction in an unpublished Memorandum Opinion and Judgment. Washington v. United States, No. 88-CF-502 (D.C. April 12, 1990).
On October 4, 1991, appellant filed his first pro se motion to vacate sentence under D.C.Code § 23-110. In that motion, appellant argued (1) that he should not have been allowed, mainly because of his youth, to waive his Miranda rights[2] without the presence of an attorney, and (2) that certain hearsay evidence should not have been admitted at trial. The government responded that appellant's claims should be rejected because they could have been, but were not, raised before trial or on direct appeal. In due course the trial court entered an order directing appellant to show cause "for not having asserted [these claims] prior to trial and that the admission of his statement was a serious defect which was not correctable on direct appeal or that he was prevented by exceptional circumstances from raising it on appeal." In response, appellant maintained in a "memorandum in support" of his motion that he was legally incompetent to make statements to the police and that his counsel should have raised the issue of his competency before trial.[3] Furthermore, appellant cited the following as "exceptional circumstances" which, he maintained, excused his failure to raise this ineffectiveness claim on direct appeal: "(1) his youth, (2) his naive belief that his attorney would preserve and protect his rights, and (3) his utter ignorance of the law as it pertained to these issues."
In an order dated October 2, 1992, the trial court denied the § 23-110 motion, ruling that appellant's motion did not require a hearing because his allegations were "vague and conclusory." The court also concluded that appellant's claims of youth-related incompetency were without merit because he was twenty years old at the time of his arrest, and that appellant had not shown good cause for failing to raise any of these issues before trial or on direct appeal.
On September 20, 2001, more than thirteen years after his conviction and more than eleven years after that conviction was affirmed on appeal, appellant filed a second pro se motion to vacate his sentence under section 23-110. Attached to this motion was a separate motion for new trial based on a claim of newly discovered evidence.[4] In the § 23-110 motion, appellant again asserted that his trial counsel (now deceased) had rendered ineffective assistance. This time, however, he based his claim on counsel's failure (1) to call an exculpatory witness, (2) to cross-examine an adverse witness, (3) to conduct a sufficient investigation and prepare adequately for trial, and (4) to challenge allegedly false evidence presented by the government at his sentencing hearing. As for the motion for new trial, the supposed newly discovered evidence was an "affidavit" (which bore no date) signed by Paulette Lanham, who had been a witness for the government, in which she recanted her *902 trial testimony.[5]
In a single order dated November 29, 2001, both motions were denied. The court found appellant's latest § 23-110 motion to be an "abuse of writ" because he was raising issues that he had failed to raise in his previous § 23-110 motion, even though he knew or should have known of these matters when he filed the earlier motion. The court also held that it was without jurisdiction to hear appellant's motion for new trial because, under Criminal Rule 33, such motions must be filed within three years after the guilty verdict. Appellant then noted the instant appeal.

II. THE § 23-110 MOTION

A. Abuse of Writ

There is a presumption that a trial judge should conduct a hearing on a § 23-110 motion. See, e.g., Wright v. United States, 608 A.2d 763, 765-766 (D.C.1992) (citing cases). This court has recognized, however, that in some circumstances a hearing is not always required. See Ramsey v. United States, 569 A.2d 142, 147 (D.C.1990) (listing "three categories of claims that do not merit hearings"); Pettaway v. United States, 390 A.2d 981, 984 (D.C.1978) (same).
Here we are dealing with appellant's second § 23-110 motion, in which he raises issues not raised either on direct appeal or in his first § 23-110 motion. In such circumstances the rule is more strict. "[I]f an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim." Shepard v. United States, 533 A.2d 1278, 1280 (D.C.1987).[6] "Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." Head v. United States, 489 A.2d 450, 451 (D.C.1985) (citing United States v. Frady, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); accord, e.g., Thomas v. United States, 772 A.2d 818, 824 (D.C. 2001); Vaughn v. United States, 600 A.2d 96, 97 (D.C.1991). Moreover, when, as in this case, "the defendant has already launched several collateral attacks on his conviction, the reasons supporting the application of the cause and prejudice test are even more compelling." Matos v. United States, 631 A.2d 28, 30 (D.C.1993); see McCleskey v. Zant, 499 U.S. 467, 490, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("abuse of writ" doctrine generally "prohibits subsequent... consideration of claims not *903 raised, and thus defaulted, in the first [collateral] proceeding").[7]
The procedural default articulated in Shepard and other cases is not insurmountable. To establish legally sufficient "cause" for his failure to raise a claim on direct appeal, however, appellant must show (if he can) that he "was prevented by exceptional circumstances" from raising the claim at the appropriate time. Head, 489 A.2d at 451; see Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (a defendant must demonstrate that "some objective factor external to the defense impeded counsel's efforts" to raise the claim on direct appeal).[8] Once cause is shown, appellant must then "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. at 170, 102 S.Ct. 1584 (emphasis in original).
We hold that the trial court did not err in concluding that appellant was procedurally barred from asserting his claim of ineffective assistance of counsel because he failed to meet the "cause and prejudice" standard. Instead of demonstrating sufficient cause for his failure, either on direct appeal or in his first § 23-110 motion, to raise his present claims of ineffective assistance, appellant merely recites in his brief the same arguments that he made in his second § 23-110 motion as to why his counsel's performance was supposedly deficient. He makes no real attempt to explain why these claims could not have been raised earlier. The closest that appellant comes to arguing "cause" is the assertion that his counsel never provided to him, and thus he never received, the government's Memorandum in Aid of Sentencing which, according to appellant, contained false information that his attorney should have challenged. One answer to this argument is that appellant himself was present at his sentencing hearing and surely must have known that the government was making false statements if in fact it did so. Thus he was aware of this basis for an ineffectiveness claim before he even noted his direct appeal, let alone before filing his first § 23-110 motion.[9]
*904 Indeed, the same reasoning can be applied to each of the ineffectiveness claims raised in appellant's second § 23-110 motion, since he was present at his trial and therefore aware of any alleged errors as they took place. As the government observes in its brief, appellant's claims are on their face the types of claims that he knew or should have known about at the time he filed either his brief on direct appeal in 1989 or his first § 23-110 motion in 1990.[10] In fact, appellant even acknowledges being aware of at least so me of his attorney's decisions with which he now finds fault. Regarding counsel's failure to cross-examine a government witnesses (Christine Blake), for example, appellant alleges that at trial he "asked [counsel] repeatedly to do so." The same is true with respect to counsel's failure to call an exculpatory witness (Paula Hackney). In his brief appellant states that "counsel's inactions became clear when he refused to speak with Ms. Hackney at appellant's trial proceeding." Statements such as these plainly show that appellant knew of the facts on which he now bases his ineffectiveness claims as they were occurring, yet he can point to no external factors (as required by Murray) which prevented him from timely presenting those claims to the court at an earlier date.
For these reasons we hold that appellant has not demonstrated "cause" for his failure to raise his current claims of ineffective assistance either on direct appeal or in his first § 23-110 motion. Because appellant has failed to show cause, this court "need not decide whether he suffered prejudice or even if the trial court was in error." Head, 489 A.2d at 451 n. 5.

B. The Massaro Case

After this case was submitted, appellant filed a pro se memorandum asserting that the Supreme Court's recent decision in Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), is "highly relevant" to this appeal. We then requested the government to file a supplemental memorandum discussing (1) the effect of Massaro, if any, on this case; and (2) how the conflict, if any, between Massaro and our decision in Shepard should be resolved. Appellant, with leave of court, filed a response to the government's memorandum.
In Massaro, after the petitioner's conviction on federal racketeering charges had been affirmed on direct appeal, he filed a motion to vacate his conviction under 28 U.S.C. § 2255 (the federal counterpart of D.C.Code § 23-110), alleging ineffective assistance of counsel at his trial. In affirming the District Court's denial of Massaro's motion, the Second Circuit concluded that he was procedurally barred from bringing the ineffectiveness claim in a collateral proceeding. In a previous case, Billy-Eko v. United States, 8 F.3d *905 111, 114 (2d Cir.1993), the Second Circuit acknowledged that in most cases a petitioner should not be barred from raising an ineffectiveness claim on collateral attack if that claim was not presented on direct appeal. The court further held, however:
If the defendant has new appellate counsel on direct appeal, and the record is fully developed on the ineffective assistance issue, there is little reason to extend the defendant an unlimited opportunity to delay bringing the claim. Thus, in this narrow category of cases, but only in these cases, the petitioner must still show cause for not bringing the ineffective assistance claim on direct appeal, and prejudice resulting therefrom.
Id. at 115. The Second Circuit reiterated this holding in the Massaro case, stating that, "[a]s a general matter, a federal prisoner cannot employ § 2255 to litigate issues that could have been, but were not, raised on direct appeal." Massaro v. United States, 27 Fed. Appx. 26, 29 (2d Cir.2001) (citation omitted). Observing that Massaro was represented by new counsel on his direct appeal, that the supposed ineffectiveness was evident from the record, and that he failed to show cause for not raising the issue on direct appeal, the court held that he was procedurally barred from bringing the ineffective assistance claim on collateral attack under 28 U.S.C. § 2255.
The Supreme Court reversed, and held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro, 123 S.Ct. at 1694. Acknowledging that the procedural default rule of Frady and other cases was designed "to conserve judicial resources and to respect the law's important interest in the finality of judgments," id. at 1693, the Court nevertheless concluded that requiring a defendant to bring an ineffectiveness claim on direct appeal "does not promote these objectives," since it would "creat[e] the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." Id. at 1693-1694. Moreover, the issue "would be raised the first time in a forum not best suited to assess those facts," id. at 1694, and appellate courts "would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the district court on collateral review." Id. at 1695 (citation omitted).
Because appellant's case is in a completely different procedural posture from Massaro, we are satisfied that the Massaro decision has no impact on the matter before us. The trial court denied appellant's most recent motionwhich is the subject of this appealnot because appellant failed to raise his ineffectiveness claim on direct appeal, as the District Court ruled in Massaro, but because he had already asserted a different ineffective assistance claim in an earlier collateral attack. Nothing in Massaro undermines the well-settled principle in this court,[11] and in the federal courts generally,[12] that a claim not raised in a previous collateral attack is procedurally defaulted.
*906 Furthermore, we also hold that Massaro in no way conflicts with this court's decision in Shepard. The main concern of the Supreme Court in Massaro was that inefficiencies and delays would occur if a defendant were required to present an ineffectiveness claim on direct appeal before the issue could be considered, and an adequate record made, by the trial court. Massaro, 123 S.Ct. at 1694-1695. The procedure required under Shepard for bringing an ineffectiveness claim under section 23-110 is significantly different from that articulated in Billy-Eko (and ultimately overturned in Massaro). In fact, the procedure prescribed in Shepard is the opposite of, and implicitly counsels against, the Second Circuit's approach. Under section 23-110, there is no requirement that a convicted defendant initiate an ineffectiveness claim on direct appeal under the circumstances articulated in Billy-Eko, or any other circumstances for that matter. On the contrary, the defendant must file a § 23-110 motion with the trial court during the pendency of the direct appeal if he is aware of the grounds for an ineffectiveness claim.[13] "[T]hat motion can furnish appellant a means of making a record regarding matters relevant to the ineffectiveness claim that do not appear in the record of the case on direct appeal." Shepard, 533 A.2d at 1280 (citations omitted). Indeed, that is the principal reason for the Shepard rule. See Williams v. United States, 783 A.2d 598, 602 (D.C.2001) (en banc) (ineffectiveness claim, "far more probably than [other claims], will require amplification through evidence not present, and findings not possible, within the four corners of the trial record").
While the § 23-110 motion is pending in the trial court, this court will usually order that the direct appeal be stayed. See id. at 600 (our "usual practice" has been to stay the direct appeal); Shepard, 533 A.2d at 1280 ("this court has routinely granted requests for stay").[14] Then, if the motion is denied, any appeal from that denial is consolidated with the direct appeal, and the two appeals are considered together. This procedure makes it possible for the motion to be ruled upon first by the trial judge, who would already be familiar with the trial record[15] and who could, if necessary, hold an evidentiary hearing on the ineffective assistance claim. Thus the procedure set forth in Shepard actually alleviates the concerns articulated in Massaro, enabling this court to conserve its time and effort by deciding the entire case in a single proceeding.[16]

III. THE MOTION FOR NEW TRIAL
As we have mentioned, the "newly discovered evidence" on which appellant *907 based his motion for new trial was the recantation of the trial testimony of a government witness, Paulette Lanham. The trial court ruled that the motion was barred on jurisdictional grounds, citing Criminal Rule 33. For the first time on appeal, appellant incorporates his claim of newly discovered evidence into his argument that the court erred in denying him a hearing on his § 23-110 motion, asserting that his trial counsel was deficient by failing "to uncover the alleged perjury." Appellant has apparently re-styled his newly discovered evidence argument as an ineffectiveness claim on appeal to avoid Rule 33's stringent time restrictions. Because this argument was not made belowat least not in this contextit is not properly before this court as the basis of an ineffective assistance claim. See Miller v. Avirom, 127 U.S.App.D.C. 367, 369-370, 384 F.2d 319, 321-322 (1967). But even if it were, appellant's argument would fail because his Rule 33 motion simply cannot be interpreted as asserting an ineffectiveness claim.[17]
Appellant also argues that the trial court "erred as a matter of law in failing to decide whether the recantation of [a government witness] is credible." As a general rule, "[i]f the motion for a new trial is based on the recantation of a witness, the trial court first determines the credibility of the recantation and that witness's trial testimony." Herbin v. United States, 683 A.2d 437, 441 (D.C.1996) (citation and footnote omitted). "Only if the recantation is credible need the court determine the effect that the recantation would have had on the jury." Id. (citations omitted). But in this case the credibility of the recantation is irrelevant because the motion was filed ten years too late.
Regardless of the potential credibility of the recantation and the effect it may have on the jury, the trial court correctly ruled that appellant's motion was jurisdictionally barred. "A motion for a new trial based on newly discovered evidence may be made only before or within three years after the verdict or finding of guilty." Super. Ct. Crim. R. 33. Because appellant did not file his motion until more than thirteen years after he was found guilty, the trial court was without jurisdiction even to consider it. "The time periods for filing [a] new trial motion are jurisdictional; this court has no power to consider an untimely new trial motion, even if the result seems harsh ...." Taylor v. United States, 759 A.2d 604, 609 (D.C.2000); accord, e.g., Diamen v. United States, 725 A.2d 501, 506 (D.C.1999) (trial court had *908 no power to grant motion based on claim of newly discovered evidence which was filed many years after time expired under Rule 33; defendants could not avoid or circumvent the jurisdictional bar by captioning the motion as one filed under section 23-110).
Here again (see note 9, supra) appellant's long delay in filing the motion weighs heavily against him. Even if there were no jurisdictional bar under Rule 33 (and of course there is; see Diamen, 725 A.2d at 506 (citing authorities)), appellant's delay makes vital parts of the record unavailable, and the passage of time would probably make it impossible for the government to retry the case. See, e.g., Dobson, 711 A.2d at 84; Legrand v. United States, 570 A.2d 786, 791 (D.C.1990). As to the allegedly recanting witness, it is impossible for us now, as it was for the trial court when it ruled on the new trial motion, to assess just how important a witness she was. Since appellant has made no showing at all that he was unable to obtain a statement from the witness within the three-year time limit imposed by Rule 33,[18] we would not be willing to overlook his delay even if we had the power to do so.
We therefore hold that the court committed no error in denying appellant's motion for new trial.

IV
The order from which this appeal is taken is in all respects
Affirmed.
NOTES
[1] Because this appeal deals solely with procedural issues concerning appellant's motions for post-conviction relief, we need not recite the facts underlying his conviction.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] It was not until appellant filed this memorandum that it became clear that his motion was based on a claim of ineffective assistance of counsel.
[4] The latter motion was captioned as a "motion pursuant to Rule 60(b) due to newly discovered evidence," apparently referring to Super. Ct. Civ. R. 60(b). That rule, however, applies only in civil cases. Because this is a criminal case, the trial court correctly treated appellant's motion as one filed under Super. Ct. Crim. R. 33, which is applicable in criminal cases.
[5] Although appellant refers to Ms. Lanham's statement as an affidavit, the document in which Ms. Lanham purported to recant her testimony was not notarized or otherwise sworn; hence it was not an affidavit. Woldeamanuel v. Georgetown University Hospital, 703 A.2d 1243, 1245 n. 4 (D.C.1997).
[6] Appellant argues that Shepard is inapplicable to his case, since we have stated that its holding applies only to cases tried after December 2, 1987, the date of the Shepard opinion. Dobson v. United States, 711 A.2d 78, 84 n. 11 (D.C.1998); see Shepard, 533 A.2d at 1280. While appellant correctly points out that his indictment was filed in February 1987, he fails to mention that his trial did not take place until February 1988, two months after the Shepard case was decided.

The record does reflect that appellant's case was initially called for trial on July 6, 1987, and that a jury was selected and sworn on that date. However, on the next day, July 7, the defense moved for a continuance; the motion was granted, the jury was discharged, and the trial was continued until October 14. After two more continuances, the trial actually began on February 22, 1988.
[7] The abuse of writ doctrine can be traced back at least as far as the 1920's. See Salinger v. Loisel, 265 U.S. 224, 231-232, 44 S.Ct. 519, 68 L.Ed. 989 (1924); Wong Doo v. United States, 265 U.S. 239, 241, 44 S.Ct. 524, 68 L.Ed. 999 (1924).
[8] The Court in Murray went on to explain: "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel ... or that `some interference by officials' ... made compliance impracticable, would constitute cause under this standard." Murray, 477 U.S. at 488, 106 S.Ct. 2639 (citations omitted). Appellant has not even come close to making such a showing.
[9] We are not, of course, suggesting that a convicted defendant has any duty to read the government's sentencing memorandum if the government elects to file onealthough we may, and do, expect that a competent defense attorney will share the contents of such a memorandum with his client so that the client may respond to any errors or inaccuracies in the memorandum before sentence is actually imposed. Appellant states in his brief that his trial counsel did not do so, and that he did not see the memorandum until a later attorney obtained a copy several years after the trial and gave it to him. For the sake of argument we assume that this is true. Nevertheless, an attorney's failure to provide his client with a copy of a sentencing memorandum, without more, will not necessarily constitute ineffective assistanceespecially in the absence of any showing of prejudice.

A particular problem in this case is that we do not know what the prosecutor may have said at the sentencing hearing. That, however, is mainly appellant's fault for delaying so long before filing his second § 23-110 motion. Although appellant's delay, by itself, does not bar the court from considering the motion, the passage of so much time makes it all the more difficult to assess appellant's claim of ineffective assistance. The longer the delay, the greater the difficulty. See Dobson, supra note 6, 711 A.2d at 84.
[10] Citing Murray v. Carrier, supra, appellant argues that a showing of ineffective assistance is by itself enough to overcome the procedural bar. This argument stems from a misinterpretation of the Court's statement in Murray that "[i]neffective assistance of counsel ... is cause for a procedural default." 477 U.S. at 488, 106 S.Ct. 2639. When this sentence is read in context, it becomes clear that the Court is saying that ineffectiveness of counsel may constitute "cause" only when that ineffectiveness itself is the very reason why such claims were not made on direct appeal. See id. at 488-489, 106 S.Ct. 2639; see also McCleskey, 499 U.S. at 494, 111 S.Ct. 1454.
[11] See, e.g., Thomas, 772 A.2d at 824; Matos, 631 A.2d at 30; Vaughn, 600 A.2d at 97.
[12] See, e.g., Potts v. United States, 210 F.3d 770, 771 (7th Cir.2000); United States v. Kleinbart, 307 U.S.App. D.C. 136, 140-141, 27 F.3d 586, 590-591 (citing Frady), cert. denied, 513 U.S. 978, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994).
[13] An appellant may assert an ineffectiveness claim for the first time on direct appeal, thereby limiting the court's consideration of the issue to the existing trial record, see Proctor v. United States, 381 A.2d 249, 252 (D.C. 1977), but he is by no means required to do so.
[14] This is not an inflexible rule, however. We made clear in our recent en banc opinion in Williams that if appellate counsel is concerned about potential delay, "he may request that the appeals not be consolidated and [that] resolution of the direct appeal not be deferred ...." Williams, 783 A.2d at 602 n. 4.
[15] In the instant case, as occasionally happens, the original trial judge had retired before the motion was filed, so the motion had to be considered by a new judge. The fact that this may occur now and then as a result of the passage of time, however, does not weaken either the holding of Shepard or the basic principles that underlie it.
[16] We have, on several occasions since Shepard, explained why following the Shepard procedure would relieve this court of the very burdens that caused the Supreme Court to be concerned in Massaro. See, e.g., Mack v. United States, 570 A.2d 777, 785 (D.C.1990) ("This court is in the best position to assess a claim of ineffective assistance of counsel where a separate motion has been filed and an appropriate record has been made"); Ramsey, 569 A.2d at 146 ("Ineffective assistance of counsel is the type of serious defect which is typically not correctable on direct appeal and is therefore an appropriate ground for a collateral attack"); Jenkins v. United States, 548 A.2d 102, 106 (D.C.1988) ("over the years we have encouraged appellate counsel to pursue collateral attacks under § 23-110 alleging ineffective assistance of trial counsel ... before the direct appeal is resolved, with a view to consolidating this court's review of the direct appeal and of the collateral attack in one proceeding").
[17] Appellant argues that the trial court erred in considering his motion under Rule 33, rather than as an ineffective assistance claim under section 23-110, without first giving him notice that it would do so. Not only is this argument without merit, but it mischaracterizes his motion. The motion was filed as a motion for new trial based on newly discovered evidence, and it is only on appeal that appellant, for the first time, describes the motion as presenting an ineffectiveness claim. Thus the trial court treated the motion precisely as appellant intended it to be treated. In any event, we have often and consistently held that "[t]he nature of a motion is determined by the relief sought, not by its label or caption." Wallace v. Warehouse Employees Union, 482 A.2d 801, 804 (D.C.1984) (citations omitted).
[18] Indeed, appellant himself stated, in an affidavit attached to the motion for new trial, that he told his attorney "at trial ... that Ms. Lanham was not the person whom I met on my way downstairs after discovering the body" (emphasis added), thus indicating that both appellant and his attorney had cause to doubt Ms. Lanham's testimony before the case even went to the jury.