# District of Columbia
# Court of Appeals

No. 13-CO-1349

JAYVON R. WHITE,

                                Appellant,

   v.



FEL-2363-00

UNITED STATES,

                                Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: THOMPSON and BECKWITH, *Associate Judges*; and REID, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's judgment is vacated, and the case is remanded to the trial court for an evidentiary hearing, followed by the trial court's statement of factual findings and conclusions of law.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: September 1, 2016.

Opinion by Senior Judge Inez Smith Reid.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CO-1349

FILED 9/1/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

JAYVON R. WHITE, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(FEL-2363-00)

(Hon. Jennifer M. Anderson, Motions Judge)

(Argued September 17, 2015                    Decided September 1, 2016)

*Matthew J. Dowd*, with whom *Wesley E. Weeks*, was on the brief, for appellant.

*Tim Cahill*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *James Sweeney*, and *Lauren R. Bates*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*:  In 2004, this court rejected appellant Jayvon White's challenge to the trial court's denial of his motion to withdraw his guilty plea. *White v. United States*, 863 A.2d 839 (D.C. 2004) (*White I*).  In the case now

before us, Mr. White appeals the trial court's denial of his 2012 *pro se* motion, filed under D.C. Code § 23-110 (2012 Repl.), to vacate, set aside or correct sentence and judgment. He primarily claims that (1) during his plea colloquy the trial court misinformed him about his parole eligibility; and (2) the trial court abused its discretion by denying his request for an evidentiary hearing on his 2012 motion. He also argues that he is not procedurally barred from asserting his 2012 claims. For the reasons set forth below, we vacate the trial court's judgment and remand this case to the trial court for an evidentiary hearing, followed by the trial court's statement of factual findings and conclusions of law.

## FACTUAL SUMMARY

The record reveals that on September 4, 2001, the trial court (the Honorable Judith Retchin) held a hearing regarding Mr. White's decision to accept the government's plea offer. Mr. White agreed to plead guilty to the lesser-included charge of second-degree murder while armed, and to possession of a firearm during a crime of violence ("PFCV"). The government agreed to (a) dismiss another charged robbery case and the remaining counts in the indictment, and (b) to withdraw the life without parole papers that it had filed.

During the plea colloquy on September 4, 2001, Judge Retchin informed Mr. White that (a) the penalty for the second-degree murder offense was "20 years to life with a mandatory sentence of at least five to fifteen years," and (b) the related PFCV offense had a mandatory sentence of five to fifteen years. In addition, Judge Retchin explained that she could impose consecutive sentences, "meaning that [she] could sentence [Mr. White] to as much as 25 years to life." The judge stated that Mr. White would not be affected by the then recently adopted Truth in Sentencing law, and therefore, he would be eligible for parole, but "that the mandatory part of the sentence is exempted from the parole, meaning that [Mr. White] would be required to serve a minimum of five years," and that if the court made the sentences consecutive, "it would be a minimum of 10 years before [he would] even [be] eligible for parole." Mr. White, who was represented by his trial counsel (Michael J. McCarthy), said he understood the explanation, and he acknowledged that no one had told him what his actual sentence would be.[1] Mr. White entered his guilty plea.

---

[1] When Judge Retchin asked why Mr. White had decided to plead guilty rather than go to trial, Mr. White responded, "Because if I go to trial, I'm go[i]n[g] [to] be found guilty. I'm going to get life without parole." To the judge's follow up question as to whether he was pleading guilty because he is guilty, Mr. White said, "Yes, ma'am."

Prior to sentencing and through new trial counsel (Lexi Negin Christ), Mr. White filed a motion on December 7, 2001, to withdraw his guilty plea. He submitted an affidavit in support of his motion on January 14, 2002. The affidavit summarized his alleged understanding as to what his trial counsel had told him about the effect of a guilty plea.[2] The trial court held an evidentiary hearing on the motion on February 8, 2002, during which Mr. White testified. He stated his belief that if he lost at trial he would be sentenced to life without parole, and further, that defense counsel had informed him that if he took the government's plea offer, "he would see the parole board after 5 years" and he would "probably do about fifteen years." Subsequently, on February 13, 2002, the trial court denied Mr. White's motion, rejecting (1) his assertion of legal innocence; (2) his contention that he promptly moved to withdraw his guilty plea; (3) his argument that he was "deprived of the full benefit of competent counsel" with respect to his plea offer;

---

[2] Mr. White declared that he was in the hospital with a stomach problem (accompanied by internal bleeding) when his trial attorney (Mr. McCarthy) appeared to explain the government's plea offer. He understood from counsel that if he "went to trial and lost [he] would get sentenced to life without parole"; but that if he entered a guilty plea, he "would probably be sentenced to fifteen years or less," and that he "would be eligible for parole after serving the mandatory five years, [and] if the sentences were consecutive, a mandatory ten years." He claimed that his counsel advised him that if he "told the [c]ourt what had happened, the judge would not accept the plea because [his] version of what happened could be a self-defense defense."

(4) his claim that his medical condition "distracted him" in his consideration of his plea offer; and (5) his claim that "he had no confidence in his trial counsel."

The trial court's judgment and commitment order, following Mr. White's sentencing, shows that on June 28, 2002, Judge Retchin sentenced Mr. White to 20 years to life on the second-degree murder offense and 5 to 15 years on the PFCV offense, and made the sentences consecutive. Judge Retchin indicated that Mr. White was committed to prison for "25 years," and that a "mandatory minimum term of 10 years applies." The judge amended the judgment and commitment order on March 12, 2004, *nunc pro tunc* to June 28, 2002, by deleting "25 years" but leaving "mandatory minimum term of 10 years applies." Mr. White noticed an appeal of the trial court's denial of his motion to withdraw his guilty plea; we resolved that appeal in *White I*.

Mr. White made other efforts to alter or clarify his sentences. He sent a letter to Judge Retchin on August 4, 2006, asking that his sentences be changed to run concurrently. He sent another letter on October 26, 2006, which the court treated as a *pro se* motion to reduce sentence. The trial court denied the motion on the ground of lack of authority to reduce Mr. White's sentence. Judge Retchin received yet another letter from Mr. White on March 16, 2007, which she

interpreted as a *pro se* motion to reduce sentence. In response to the motion, Judge Retchin asserted on June 7, 2007, that even if the court had authority to reduce Mr. White's sentences, it would not do so because of its belief that "the sentence imposed was just and appropriate in light of the conduct that gave rise to the conviction."

Approximately two years later, in a letter dated June 1, 2009, Mr. White requested Judge Retchin's assistance with his parole eligibility. The judge's administrative assistant responded on June 3, 2009, that "[t]he [c]ourt does not intercede in parole determinations." The assistant included the name of the Chief of the Parole Division at the Public Defender Service. Later, on September 13, 2010, Mr. White lodged a *pro se* motion "seeking clarification of exactly when he is eligible for parole consideration." The first document attached to the motion was a 10/23/2008 program review of an "Inmate Skills Development Plan" containing basic data, including an entry stating "10 years – DC Omnibus Adult Sentence" – and a box labeled "Parole Status" showing an initial hearing date of "04-01-2013." The second document was labeled, "Sentence Monitoring Computation Data as of 09-09-2009," and it showed "Parole Eligibility" as "03-08-2025," but also specified "Next Parole Hearing Date" as "06-00-2010." The third document was a copy of Mr. White's August 18, 2010, inquiry to the Federal

Bureau of Prisons about his parole eligibility date and the Bureau's response, stating: "Contact with DSCC (DCCOMPS), reported your parole hearing should not have been June 2010, but 6-9 months prior to your parole eligibility which is March 8, 2025. The ten-year DC Mandatory Minimum Term, is the least amount the Judge could sentence you to and would come [in]to play if you[] earned Educational Good Time, which you cannot. Your minimum term is 25 years and therefore [you are] eligible for parole March 2025." Judge Retchin denied the motion for clarification of sentence, declaring on September 20, 2010, that "[i]t is the responsibility of the Parole Commission to determine when and if [Mr. White] will be released on parole," and that "the mandatory minimum sentence does not equate to a parole eligibility date."

Months later, on June 5, 2012, pursuant to D.C. Code § 23-110, Mr. White filed a *pro se* motion to vacate, set aside or correct sentence and judgment. He claimed, first, that he "entered his plea of guilty under the advi[c]e of counsel and the [c]ourt, that he would be eligible for parole in ten years when in actuality, it would take 25 years from the date of [his] sentencing before [he] was eligible for parole." He further asserted that he was "[o]nly . . . told [in] July of 2010 that he had been removed from the [p]arole docket because he was ineligible for parole until March 8, 2025." Second, Mr. White argued that he was entitled to an

evidentiary hearing because "the [c]ourt gave [him] erroneous advi[c]e," as follows: "[I]f I make [the] sentence consecutive, it would be a minimum of 10 years before you're even eligible for parole." Third, Mr. White maintained that the government breached its agreement with him because he has been incarcerated for ten years and has been "denied . . . the fruits of his plea deal."[3]

The Honorable Jennifer Anderson denied Mr. White's motion on October 9, 2013, finding that Mr. White's claims were procedurally barred, and that even if they were not procedurally barred, he would not be entitled to relief. Judge Anderson also concluded that none of Mr. White's allegations required an evidentiary hearing because (1) Judge Retchin denied the "exact claim" about his counsel in his "initial motion to withdraw his guilty plea, which denial was affirmed on appeal," (2) the claim about Judge Retchin misinforming him about his parole eligibility "is palpably incredible based on the existing record," and (3) with regard to his plea agreement with the government, "there was no misinformation for the government to object to."

---

[3] On July 1, 2013, Judge Anderson denied Mr. White's motion requesting appointment of counsel to reply to the government's opposition to his motion.

**ANALYSIS**

*The Procedural Default Issue*

We first consider Mr. White's argument that his claims are not procedurally barred, and the government's counter contention that his claims are procedurally barred. Mr. White argues that the trial court "inadvertently misinformed [him] that *'if I make this sentence consecutive, it would be a minimum of 10 years before you're even eligible for parole,'* even though Mr. White will not be eligible for parole for 25 years" (emphasis in original). He maintains that "[t]his statement and the failure of the court, trial counsel and the prosecutor to correct it at the plea hearing, along with the incorrect advice received by Mr. White from his appellate counsel that he could not raise the issue on appeal constitutes cause." Mr. White further asserts that the government waived the requirement that he show prejudice by stating in the trial court that "the defendant's motion may be summarily denied without considering prejudice," and that even if the government did not waive the prejudice requirement, "he has been prejudiced because he would have gone to trial had he known that he would not be eligible for parole until after he served 25 years in prison." The government counters that "the alleged error that [Mr. White] was misinformed about his parole eligibility date was actually known to [him] well

before his direct appeal was filed," and that because he "has not moved to recall the mandate, . . . [he] cannot establish that his appellate counsel's alleged 'incorrect advice' constitutes 'cause' for his failure to raise his claim during the pendency of his direct appeal."

In resolving the procedural default issue, we are guided by the following legal principles. "[I]f an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim." *Washington v. United States*, 834 A.2d 899, 902 (D.C. 2003) (internal quotation marks omitted) (quoting *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987)). "Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Id.* (internal quotation marks omitted) (quoting *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985)). "Relief under § 23-110 is appropriate only for serious defects in the trial which were not correctible on direct appeal or which appellant was prevented by exceptional circumstances from raising on direct appeal." *Head*, *supra*, 498 A.2d at 451.

Here, we are presented with a rather unique and exceptional factual and procedural context on which to determine whether Mr. White failed to raise a challenge to his guilty plea on direct appeal that was "available" to him during the pendency of his direct appeal, *Washington*, *supra*, 834 A.2d at 902, and if so, whether Mr. White has satisfied his burden to show "cause" and "prejudice" for the failure. That is, we must decide whether relief under § 23-110 is appropriate because "serious defects" marked Mr. White's plea process, and these defects "were not correctible on direct appeal" because "exceptional circumstances" prevented Mr. White from raising them before this court resolved *White I*.

At the outset of our analysis, we recognize that "a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of all of the possible indirect and collateral consequences," and that "[o]rdinarily, parole eligibility is such an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty." *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir. 1979). However, a trial court's misinformation about a defendant's parole eligibility during a plea proceeding may be deemed so prejudicial as to require reversal of a conviction and a new opportunity for the defendant to decide whether or not to enter a guilty plea. *See Spradley v. United States*, 421 F.2d 1043, 1047-48 (5th Cir. 1970) (where trial

court misled or inadvertently misinformed defendant about the time of his parole eligibility, error "was prejudicial enough to require a reversal of the conviction" and an opportunity for defendant to decide whether to stand trial or to again enter a guilty plea); *Gates v. United States*, 515 F.2d 73, 80-81 (7th Cir. 1975) (where trial court "not only fails to inform [defendant] prior to his plea of his ineligibility for parole, but also incorrectly informs him at the time of sentencing that he will be eligible[,] [t]hese compound errors present 'exceptional circumstances,'" requiring reversal of conviction and an opportunity to "plead anew").

Significantly, the record before us reveals that even though the trial court had no obligation to inform Mr. White about his parole eligibility, (1) the trial court may have made misleading and confusing or ambiguous statements regarding the timing of Mr. White's parole eligibility; and (2) Mr. White, acting *pro se* from around 2006 to the time of his November 16, 2013, notice of appeal in this case, sought clarification from the trial court and the Bureau of Prisons about the date of his parole eligibility.

After telling Mr. White at his September 4, 2001, hearing that she "could sentence [him] to as much as 25 years to life," Judge Retchin informed him that if she made his sentence consecutive, he would be eligible for parole, but that "it

would be a minimum of 10 years before [he would] even [be] eligible for parole." With respect to the June 28, 2002, judgment and commitment order, Judge Retchin indicated that Mr. White was sentenced to prison for "25 years," and that a "mandatory minimum term of 10 years applies," but then on March 12, 2004, the judge amended the commitment order *nunc pro tunc* to June 28, 2002, by deleting "25 years" but leaving "mandatory minimum term of 10 years applies."

In response to Mr. White's *pro se* efforts (via a letter in 2009 and a later motion), Judge Retchin initially declared that "the [c]ourt does not intercede in parole determinations," but after receiving Mr. White's 2010 motion and attached documents from the Bureau of Prisons – reflecting parole hearing dates in 2013 and 2010, and a parole eligibility date of "03-08-25," as well as including the statement that Mr. White would be "eligible for parole March 2025" – Judge Retchin wrote a response to Mr. White on September 20, 2010, denying his motion for clarification and stating that the Parole Commission had to determine "when and if [Mr. White] will be released on parole." However, the judge added that "the mandatory minimum sentence does not equate to a parole eligibility date."

In light of the record before us, we cannot agree with the government's argument that Mr. White's January 14, 2002, affidavit (submitted as a supplement

to his December 7, 2001, motion to withdraw his guilty plea) forecloses Mr. White's contention that he remained confused about his parole date. We are satisfied that subsequent events belie the government's isolated reading of the affidavit. These events include Mr. White's continued pro se pursuit of clarification, Judge Retchin's 2002 and 2004 (*nunc pro tunc* 2002) statements about a possible sentence and her commitment orders, and the Bureau of Prisons' records about Mr. White's parole eligibility and parole hearing dates.

Given the record evidence of Judge Retchin's statements about a possible sentence, her commitment orders, her communications with Mr. White, and in light of the alleged records of the Bureau of Prisons that Mr. White sent to Judge Retchin with his 2010 motion, individuals who possessed education beyond Mr. White's GED level might well be misled into believing that they would be eligible for a parole hearing in 2010, or they may have become quite confused about the reason for the different and even conflicting parole eligibility dates stated by the court and the Bureau of Prisons. In short, we are unable to conclude that the claims Mr. White made in his 2012 § 23-110 motion, were "available" to him before our resolution of *White I*. Rather, we hold that because Mr. White did not know and should not have known (during the pendency of his direct appeal) of the claims presented on appeal, he need not demonstrate cause and prejudice in

accordance with *Shepard*. *See Washington*, *supra*, 834 A.2d at 902 (quoting *Shepard*, 533 A.2d at 1280).

### The Evidentiary Hearing Issue

Mr. White contends that the trial court abused its discretion by denying his § 23-110 motion without a hearing, despite the fact that there is a strong presumption in favor of a hearing. He argues that "[a]t a minimum, . . . the [c]ourt should remand for a hearing." The government supports the trial court's summary denial of Mr. White's motion, but notes that a remand for an evidentiary hearing would be proper if this court believes that Mr. White could establish his claim concerning the trial court's alleged "materially erroneous information regarding the parole consequences of a plea."

We are guided by the following legal principles. "While the decision whether to hold an evidentiary hearing on a § 23-110 collateral challenge to the constitutionality of a conviction is committed to the trial court's discretion, the extent of that discretion is quite narrow." *Bellinger v. United States*, 127 A.3d 505, 514-15 (D.C. 2015) (internal quotation marks omitted). Moreover, "any question regarding the appropriateness of a hearing on a § 23-110 motion should be

resolved in favor of holding a hearing." *Id.* at 515 (internal alterations omitted). "We will affirm the trial court's denial of a § 23-110 motion without a hearing only if the claims (1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief." *Hardy v. United States*, 988 A.2d 950, 961 (D.C. 2010) (internal quotation marks omitted). "In order to uphold the denial of a § 23-110 motion without a hearing, we must be satisfied that under no circumstances could the petitioner establish facts warranting relief." *Hilliard v. United States*, 879 A.2d 669, 671 (D.C. 2005) (per curiam); *see also Bellinger*, *supra*, 127 A.3d at 515. "Where this issue turns on questions of witness credibility, we have consistently held that credibility determinations cannot be based on affidavits or countered by conclusory statements but may be resolved only by recourse to a full evidentiary hearing." *Id.* (internal quotation marks omitted) (quoting *Newman v. United States*, 705 A.2d 246, 261 (D.C. 1997)).

Here, Judge Anderson was not the trial judge who presided over Mr. White's plea proceedings; nor was she the judge who received and responded to Mr. White's post-conviction communications. Hence, she had no firsthand or personal knowledge about the record prior to her handling of Mr. White's 2012 motion. Under "these circumstances, the lack of a hearing becomes especially significant." *Gaston v. United States*, 535 A.2d 893, 900 (D.C. 1988). Moreover, the posture of

the case before Judge Anderson appears to be different than that before Judge Retchin when she denied Mr. White's motion to withdraw his guilty plea. At that time, Judge Retchin had not yet sentenced Mr. White, and hence, the full context of Mr. White's claim that Judge Retchin misled or misinformed him had not been established.

Judge Anderson concluded that no hearing on Mr. White's claims was necessary because Judge Retchin had denied the "exact claim" about his trial counsel (Mr. McCarthy); Mr. White's claim about Judge Retchin's misinforming him about his parole eligibility "is palpably incredible based on the existing record"; and "there was no misinformation for the government to object to." We do not agree that Judge Anderson had before her the "exact claim" presented to Judge Retchin about Mr. McCarthy, given the factual context of the claim. Mr. White's 2012 motion before Judge Anderson included claims not only about Mr. McCarthy and the impact of information he acquired in 2010 from the Bureau of Prisons,[4] but also about the trial court's allegedly erroneous advice, and the alleged

---

[4] The government argues that the Bureau of Prisons' documents, around which Mr. White frames part of his argument, "were not before the trial court, . . . and, therefore, are not properly before this [c]ourt." The government also maintains that we may not take judicial notice of these documents and they "should be stricken from appellant's appendix." When Mr. White, who was handling his letters and motions in the trial court *pro se*, requested that the trial court appoint

(continued…)

government breach of his plea deal. In sum, based on the record now before us, we cannot say that Mr. White's claim is "palpably incredible." We conclude that he is entitled to an evidentiary hearing on his motion.

---

(…continued)

counsel to assist him with his 2012 motion, Judge Anderson exercised her discretion to deny the request. That decision may have compounded Mr. White's difficulty in understanding the various iterations of his parole eligibility conveyed to him through the years by the court and the prison system. Moreover, as a *pro se* litigant, he may not have had an appreciation of the need to formally present documents to the court (such as those obtained from the Bureau of Prisons), or the procedure for doing so. This court has previously noted that *pro se* litigants generally cannot expect "concessions" because of their inexperience or lack of knowledge about the judicial system, but that there are "special circumstances" which require "special care" when a *pro se* litigant prosecutes a court case, particularly technical matters or the timeliness of pleadings, and consequently, it is important to "provid[e] *pro se* litigants with the necessary knowledge to participate effectively in the trial process." *Padou v. District of Columbia*, 998 A.2d 286, 292-93 (D.C. 2010); *see also Reade v. Saradji*, 994 A.2d 368, 373 (D.C. 2010); *MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A.2d 977, 979-80 (D.C. 1999). Nevertheless, given our remand, we do not directly address the judicial notice issue relating to the Bureau of Prisons' documents. However, we note that during oral argument in this court, the government acknowledged that it reached out to the Bureau of Prisons about the documents cited by Mr. White; the Bureau of Prisons reported that there had been an error in the documents that subsequently was corrected. The Bureau of Prisons' response to the government appears to negate any question about the authenticity of the documents, and confirms Mr. White's argument pertaining to the Bureau of Prisons confusion about his parole eligibility.

Accordingly, for the foregoing reasons, we vacate the trial court's judgment and remand this case to the trial court for an evidentiary hearing, followed by the trial court's statement of factual findings and conclusions of law.

*So ordered.*