*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CO-42

ISMAHIL BARRIE, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-22491-13)

(Hon. Jennifer M. Anderson, Trial Judge)

(Submitted December 14, 2021          Decided August 11, 2022)

*Jenifer Wicks* was on the opening brief for appellant. *Ian A. Williams* was on the reply brief.

*Raj Parekh*, Acting United States Attorney, and *Ronald L. Walutes, Jr.*, and *Cristina C. Stam,* Assistant United States Attorneys, were on the brief for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and THOMPSON, *Senior Judge*.[*]

THOMPSON, *Senior Judge*: In March 2014, appellant Ismahil Barrie pled guilty to attempted first-degree sexual abuse and kidnapping.[1] In June 2019,

_____

[*] Judge Thompson was an Associate Judge of the court at the time of submission. She began her service as a Senior Judge on February 18, 2022.

2

through counsel, he filed a motion pursuant to D.C. Code § 23-110, in which he asserted that he would not have pled guilty but for the ineffective assistance of his trial counsel and asked that his convictions be vacated.  Specifically, appellant argued that trial counsel "failed to adequately investigate this matter and failed to adequately advise [appellant] about the direct [immigration] consequence of his plea in this case."  This appeal followed after the Superior Court denied appellant's motion without a hearing on his claims.  Appellant contends that the court erred in doing so and seeks a remand for a hearing.  We agree that appellant was entitled to a hearing on his claim that his counsel provided inadequate advice about the immigration implications of pleading guilty to the charged offenses.  Accordingly, we vacate the order denying the § 23-110 motion and remand for further proceedings.

**I.**

---

(…continued)

[1] *See* D.C. Code §§ 22-3002 (first-degree sexual abuse), § 22-3018 (attempt), and § 22-2001 (kidnapping).

In exchange for appellant's guilty plea, the government agreed not to indict him on any greater charges arising from the case, including first-degree sexual abuse, assault, and burglary. The government's proffer during the plea proceeding explained that appellant had earlier been in a romantic relationship with the complainant, S.L., and had remained in contact with her after the relationship ended. He visited her home with her permission on December 22, 2013, sometime in the afternoon. Later that evening and into the early hours of December 23, 2013, appellant began texting and calling her. Sometime between approximately 3:00 and 4:00 that morning, he entered her apartment while she was sleeping, confronted her in her bed, accused her of seeing another man, refused to leave her apartment when she told him to, and eventually dragged her into a closet, where he detained her against her will for about two hours and covered her mouth as she tried to scream for help. Eventually, appellant let S.L. out of the closet, and she got back into her bed, but appellant dragged her from the bed onto the floor and forcibly penetrated her vagina against her will, first with his fingers and then with his penis. When appellant thereafter went to the bathroom, S.L. ran naked from the apartment and called the police. Appellant told the court that the proffer correctly reflected "what happened."

The trial court (the Honorable Jennifer Anderson) conducted a plea colloquy with appellant before he accepted his guilty plea. Appellant confirmed that he had "had enough time to talk to [his] attorneys about [his] decision to enter a plea agreement" and stated that he understood the maximum penalties for each of the counts of conviction and the requirement that he register as a sex offender for ten years. Upon learning that appellant was born in Sierra Leone, Judge Anderson had the following exchange with appellant:

> THE COURT: Do you understand that if you are not a citizen of the United States, that conviction of either of these offenses could have the consequence of deportation, exclusion from admission to the United States[,] or denial of naturalization pursuant to the laws of the United States? Do you understand that?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: And have you had an opportunity to talk to your attorneys about any immigration consequences?
>
> [APPELLANT]: Yes, ma'am.

After accepting appellant's guilty plea, the Superior Court sentenced him to sixty months of incarceration, followed by five years of supervised release, for attempted first-degree sexual abuse, and to forty-eight months of incarceration, followed by five years of supervised release, for kidnapping, to run consecutively. The trial court also ordered appellant to register as a Class A sex offender.

In his § 23-110 motion, appellant asserted that his attorneys provided ineffective assistance by (1) failing to investigate the case effectively and to present relevant exculpatory evidence; and (2) failing to advise appellant that his plea would result in "absolute immigration consequences." Regarding the first of these grounds for relief, appellant claimed that his counsel did not interview "immediate family members who had knowledge of [appellant's] relationship with the complainant and the circumstances leading to his arrest." Appellant attached to his motion his own affidavit and affidavits from his mother and sister. Appellant's sister, Fatima Barrie, stated in her affidavit that S.L. came to the family's home to pick up appellant on or about December 19, 2013, and she did not see appellant again before his arrest on December 23, 2013. Appellant's mother, Ethel Barrie, stated in her affidavit that she had pressed charges against S.L. prior to appellant's arrest because S.L.'s son had damaged her front door in September 2013. Appellant's affidavit stated that at one point S.L. and her son went to appellant's mother's home and damaged the front door of the house. Regarding his second claim, appellant acknowledged that the court and his attorneys advised him that there were potential immigration consequences from pleading guilty but claimed that his attorneys did not explain to him that a conviction would "definitively" have "absolute immigration consequences," i.e., automatic removal and permanent

inadmissibility. Appellant claimed that he would not have pled guilty if he had known that he would be deported after serving his sentence.

The trial court concluded that appellant's motion could be resolved on the existing record and that no evidentiary hearing was necessary. Regarding appellant's claim that his counsel failed to interview appellant's family members, the court reasoned that even if appellant's allegations were true, the affidavits did not "contradict the government's significant evidence against" appellant. Regarding appellant's second claim, the court cited appellant's responses during the plea colloquy and determined that the record "conclusively show[ed] that [appellant] had the opportunity to consider the immigration consequences of accepting the government's plea offer, including deportation." The court further explained that the relevant statute, 8 U.S.C. § 1227(a), provides that aliens should be removed "upon the order of the Attorney General." Given that language, the court concluded that it should not require trial counsel to give a defendant "definitive assurances" regarding potential deportation.

**II.**

Motions under § 23-110 asserting ineffective assistance of counsel are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Upshur v. United States*, 742 A.2d 887, 895 (D.C. 1999). The *Strickland* standard requires that a defendant show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This court has recognized that "[t]he failure [by trial counsel] to make a proper pretrial investigation [and] to interview exculpatory witnesses . . . constitutes constitutional ineffectiveness." *Byrd v. United States*, 614 A.2d 25, 30 (D.C. 1992). We have also said that in the context of a guilty plea, a failure of trial counsel to inform a client of facts material to his plea can support a claim of deficient representation. *Upshur*, 742 A.2d at 895. That is because "a guilty plea is valid only if it is entered . . . with sufficient awareness of the relevant circumstances and likely consequences." *Hilliard v. United States*, 879 A.2d 669, 671 (D.C. 2005) (per curiam) (internal quotation marks omitted). "In the context of the request to set aside conviction[s] and withdraw [a] guilty plea, the *Strickland* prejudice standard requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Upshur*, 742 A.2d at 895 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Padilla v.*

*Kentucky*, 559 U.S. 356, 372 (2010) (the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

Section 23-110(c) requires a hearing on a § 23-110 motion "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." D.C. Code § 23-110(c). Thus, "[w]hile the decision whether to hold an evidentiary hearing on a § 23-110 [motion] is committed to the trial court's discretion, the extent of that discretion is quite narrow," and "[a]ny question regarding the appropriateness of a hearing [on a § 23-110 motion] should be resolved in favor of holding a hearing." *Bellinger v. United States*, 127 A.3d 505, 514-15 (D.C. 2015) (third and fourth alterations in original) (internal quotation marks omitted). "In order to uphold the denial of a § 23-110 motion without a hearing, we must be satisfied that under no circumstances could the petitioner establish facts warranting relief." *Hilliard*, 879 A.2d at 671 (internal quotation marks omitted). But we will affirm the trial court's denial of a § 23-110 motion without a hearing if the claims "(1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief." *Hardy v. United States*, 988 A.2d 950, 961 (D.C. 2010) (internal quotation marks omitted). Where the merit of a motion "turns on questions of witness credibility, we have

consistently held that credibility determinations cannot be based on affidavits or countered by conclusory statements but may be resolved only by recourse to a full evidentiary hearing." *White v. United States*, 146 A.3d 101, 109 (D.C. 2016) (internal quotation marks omitted).

We review the denial of a § 23-110 motion and the trial court's decision whether to hold a hearing on the motion for abuse of discretion. *See Rivera v. United States*, 941 A.2d 434, 441 (D.C. 2008); *Wright v. United States*, 979 A.2d 26, 30 (D.C. 2009).

**III.**

Although appellant was presumptively entitled to an evidentiary hearing on all aspects of his motion, we are satisfied that the trial court did not erroneously exercise its discretion in declining to hold a hearing on appellant's claim that his counsel did not interview his family members and thus conducted an inadequate pre-trial investigation that affected counsel's advice to appellant to accept the plea offer and appellant's decision to plead guilty. We agree with the trial court that the

information set out in the affidavits of appellant's mother and sister did not entitle appellant to relief even if true. The government's evidentiary proffer clearly described that appellant and S.L. were together at S.L.'s apartment on a consensual basis prior to the sexual assault incident, and nothing in the sister's affidavit about S.L.'s picking appellant up and appellant's impliedly staying with her was exculpatory or presented the relationship between appellant and S.L. in a materially different light. Nor did the statements by appellant's mother about pressing charges against S.L. for damage done to a door exculpate appellant or shed light on possible bias by S.L. of which appellant himself was not already aware before he entered his guilty plea. Thus, appellant's motion and supporting documents do not demonstrate prejudice from counsel's alleged failure to interview appellant's family members. In short, the trial court had an ample basis for concluding that appellant's claim about counsel's failure to speak with his family members would not pass scrutiny under the prejudice prong of *Strickland*.

We reach a different conclusion about the trial court's ruling without a hearing on appellant's claim regarding the allegedly inadequate advice he received from his counsel about the immigration consequences of conviction of the offenses to which he eventually pled guilty. In rejecting appellant's claim, the trial court relied in part on the court's own statements to appellant during the plea proceeding

about the immigration consequences (including deportation) that the anticipated convictions "could have." But as a number of courts have observed, "the court's performance at the plea colloquy [is] simply irrelevant to the question whether *counsel's* performance fell below an objective standard of reasonableness." *United States v. Rodriguez-Vega*, 797 F.3d 781, 787 (9th Cir. 2015); *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy.").

With that said, while "[w]arnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first *Strickland* prong[,]" such warnings "are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error." *United States v. Kayode*, 777 F.3d 719, 728-29 (5th Cir. 2014). Here, however, we agree with appellant that the trial court's statements during the plea colloquy about the immigration consequences that the convictions "could have" were not enough to establish conclusively on the existing record that appellant was not prejudiced by any deficiency in his counsel's immigration-consequences advice.

Appellant's claim is that his counsel did not advise him that convictions of attempted first-degree sexual assault and kidnapping would "definitively" subject him to automatic removal from this country after serving his sentence. The court rejected the claim without a hearing even though the record is bare with respect to what precisely appellant's counsel told him about the risk of removal (other than that the conviction "could have immigration consequences"). Following the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010),[2] a number of courts have upheld claims of constitutionally deficient assistance of counsel where trial counsel failed to advise a defendant that deportation was a presumptively mandatory consequence of conviction of a particular offense or offenses.[3] We agree with those courts' readings of *Padilla*: that "when the

---

[2] In *Padilla*, the Supreme Court held that an attorney's pre-plea advice to his client that the client "did not have to worry about immigration status since he had been in the country so long" was constitutionally deficient given that the removal statute made the defendant's deportation presumptively mandatory. *See Padilla*, 559 U.S. at 359, 368-69.

[3] *See, e.g.*, *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (holding, with respect to a defendant who pled guilty to an aggravated felony, that "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty"); *Araiza v. State*, 481 P.3d 14, 27 (Haw. 2021) (holding that "defense attorneys must advise their clients using language that conveys that deportation 'will be required' by applicable immigration law for an aggravated felony conviction"); *Diaz v. State*, 896 N.W.2d 723, 730, 732 (Iowa 2017) (stating that "[i]f the crime faced by a defendant is clearly covered under the immigration statute, counsel must advise the defendant that the immigration

(continued…)

consequence of deportation is unclear or uncertain, counsel need only advise the

client of the risk of deportation, but when the consequence of deportation is truly

---

(…continued)

consequences will almost certainly follow" and noting that "a conviction of an aggravated felony has immediate and far-reaching immigration consequences"; finding ineffective assistance by counsel because counsel never mentioned that the defendant's charged offense was an aggravated felony and "never attempted to explain the sweeping ramifications of that classification"); *Encarnacion v. State*, 763 S.E.2d 463, 466 (Ga. 2014) (explaining that, "[i]n light of [the defendant's] conviction for an aggravated felony, defense counsel had no reason to believe there was a realistic probability that his client would escape deportation. It follows that defense counsel performed deficiently by failing to advise [the defendant] that he would be deported as a result of his guilty plea . . . ."; and adding that "[i]t is not enough to say 'maybe' when the correct advice is 'almost certainly will'" lead to deportation); *Commonwealth v. DeJesus*, 9 N.E.3d 789, 796 (Mass. 2014) (holding that counsel's advice fell below an objective standard of reasonableness because it did not convey that "all of the conditions necessary for removal would be met by the defendant's guilty plea, and that, under Federal law, there would be virtually no avenue for discretionary relief once the defendant pleaded guilty and that fact came to the attention of Federal authorities"); *State v. Kostyuchenko*, 8 N.E.3d 353, 357 (Ohio Ct. App. 2014) (per curiam) (holding as to an aggravated felony plea that counsel "had a duty under *Padilla* to ascertain from the immigration statutes, and to accurately advise [the defendant], that his conviction mandated his deportation"); *Hernandez v. State*, 124 So. 3d 757, 762 (Fla. 2012) (per curiam) (holding as to a guilty plea to an aggravated felony that "counsel was deficient under *Padilla* for failing to advise [the defendant] that his plea subjected him to presumptively mandatory deportation"); *State v. Sandoval*, 249 P.3d 1015, 1020 (Wash. 2011) (en banc) (holding that advice to a defendant convicted of an aggravated felony was deficient because it suggested "that deportation was a remote possibility"); *see also Hernandez v. State*, 61 So. 3d 1144, 1151 (Fla. Dist. Ct. App. 2011) (holding that "constitutionally competent counsel must advise a noncitizen/defendant that certain pleas and judgments *will*, not 'may,' subject the defendant to deportation").

clear, counsel must advise the client in more certain terms." *State v. Nkiam*, 778 S.E.2d 863, 868 (N.C. Ct. App. 2015) (citing *Padilla*, 559 U.S. at 369).

The Supreme Court has recognized that "removal is a virtual certainty for an alien found to have an aggravated felony conviction." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018); *see* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").[4] Appellant argues in his reply brief that his convictions of attempted first-degree sexual abuse and kidnapping were for offenses that qualify as aggravated felonies under the immigration statute and that his counsel was obligated to advise him that automatic deportation would follow upon his guilty plea and conviction. *See* 8 U.S.C. § 1101(a)(43)(A), (F), & (U) (defining the term "aggravated felony" to include "rape," "a crime of violence [as defined in 18 U.S.C. § 16] for which the term of imprisonment is at least one year," and "an attempt . . . to commit an

---

[4] Although, as the government argues, the immigration statute refers to removal "upon the order of the Attorney General," 8 U.S.C. § 1227(a), the role of the Attorney General does not detract from the presumptively mandatory nature of deportation for designated offenses. *See Padilla*, 559 U.S. at 364, 369 (recognizing that for some offenses, a non-citizen's "removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal," and 2491concluding that the defendant's removal was therefore a "presumptively mandatory" consequence); 8 U.S.C. § 1229b(a)(3) (providing that the Attorney General may not cancel removal for non-citizens convicted of aggravated felonies).

offense described in this paragraph [43]"); and 18 U.S.C. § 16(a) (defining "crime of violence" to include any offense "that has an element the use, attempted use, or threatened use of physical force against the person or property of another"). Because the United States has not briefed this issue, we decline to decide whether appellant's convictions were for aggravated felonies (although we do not imply that the matter was not sufficiently clear to enable appellant's counsel to give definitive advice about whether deportation would be presumptively mandatory upon appellant's convictions).[5] And, in any event, the record does not establish whether appellant's counsel gave him advice that was appropriate to the offenses to which he pled guilty. We conclude that a remand is necessary for the court to determine, after an evidentiary hearing, what advice appellant's counsel gave him and, if counsel did not correctly convey information about the likelihood of deportation, to determine whether there is a reasonable probability that appellant would have gone to trial, rather than entered a guilty plea, if he had received the correct immigration-consequence advice.

---

[5] As to whether appellant's conviction for attempted first-degree sexual abuse was a conviction for attempted "rape," we note that "[o]ur case law has used the terms 'first-degree sexual abuse' and 'rape' interchangeably." *Legette v. United States*, 69 A.3d 373, 375 n.1 (D.C. 2013).

Accordingly, we vacate the judgment denying appellant's motion and remand for further proceedings.

*So ordered.*